UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CRAIG OTIS GIBSON,<br><br>　　Plaintiff,<br><br>v.<br><br>JAMES DZURENDA, et al.,<br><br>　　Defendants. | Case No.: 3:18-cv-00190-MMD-WGC<br><br>**Report & Recommendation of**<br>**United States Magistrate Judge**<br><br>Re: ECF Nos. 26, 26-1 |

　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

　　Plaintiff has filed a Motion to Amend (ECF No. 26) and proposed amended complaint (ECF No. 26-1). Defendant filed a non-opposition, stating that he had no procedural basis to oppose Plaintiff's motion, but requests that the court screen the amended complaint under the Prison Litigation Reform Act (PLRA). (ECF No. 30.) The court entered an order advising Defendant that while leave to amend is to be freely given, the court need not do so where it would be futile or the amended complaint would be subject to dismissal. Therefore, the non-moving party as well as the court should review the proposed amended complaint to determine whether any portion of the proposed amended complaint would be futile, i.e., fails to state a claim upon which relief may be granted. This is the same standard the court employs in screening a complaint under the PLRA, 28 U.S.C. § 1915A, and in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As a result, the court advised Defendant it would review the motion for leave to amend and screen the proposed amended complaint, but cautioned Defendant that absent compelling

circumstances, any subsequent motion to dismiss for failure to state a claim would not be well received. This is because there was an opportunity to assert such arguments now and the court does not wish to engage in a repetitive analysis. Therefore, the court gave Defendant fourteen days to assert an argument that the proposed amended complaint fails to state a claim upon which relief may be granted. (ECF No. 31.) Defendant did not do so.

## I. AMENDMENT

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

The court finds that leave to amend (ECF No. 26) is proper under Federal Rule of Civil Procedure 15(a)(2); however, the court will now screen the proposed amended complaint to determine whether amendment would be futile in any regard.

## II. SCREENING

**A. Standard**

Under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.

§ 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915A(b)(1) tracks that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Proposed Amended Complaint**

Plaintiff's proposed amended complaint includes allegations regarding events that occurred at while he was housed in the Nevada Department of Corrections' (NDOC) High Desert State Prison (HDSP) and Ely State Prion (ESP) facilities. He names the following defendants: HDSP Warden Brian Williams, Sr., HDSP Sergeant Blazono, HDSP Senior Officer Flores, NDOC (former) Director James Dzurenda, ESP law library supervising staff Ms. Rose, ESP Warden Gittere, ESP Associate Warden William Reubart, ESP Mail Room Sergeant Hunt, ESP Correctional Officer Peterson, ESP Correctional Officer Boonsarn, John Doe # 1 ESP law library staff, John Doe # 2 ESP legal mail room staff, John Doe #3 ESP law library staff, John Doe #4 ESP grievance coordinator, John Doe #5 HDSP Prison Rape Elimination Act (PREA) coordinator, John Doe #6 HDSP PREA compliance manager, and John Doe # 7 HDSP grievance coordinator.

The allegations of the proposed amended complaint are in two categories: (1) allegations surrounding defendant Flores' conduct at HDSP; and (2) allegations concerning Plaintiff's mail and law library access at ESP.

Like the original complaint, the proposed amended complaint alleges that on February 20, 2017, Plaintiff was using the restroom and noticed defendant Flores looking through the view window, and Flores stated, "I like the way you keep that ass." Plaintiff alleges that he filed a grievance, but no action was taken. He was referred to Sergeant Blazono, and on February 28, 2017, a written and video statement was taken and logged by Blazono, but no other action was

4

taken. Then, on March 4, 2017, while breakfast was being served, Flores placed food on the food flap and then reached in and grabbed Plaintiff's penis. (ECF No. 26-1 at 7-8.)

**1. Count 1**

Plaintiff alleges that the grievance coordinator, John Doe #2, is responsible for receipt, transmittal, action and responses on all grievances within 3 days, and an investigation regarding Flores' initial sexual misconduct should have been initiated. Under Administrative Code 421 and 457, after any sexual misconduct, all investigating staff are to be notified and an investigation must occur within 24 hours. Plaintiff alleges that the investigating staff that were notified were defendants Williams, Blazono, and Dzurenda. He also asserts that the Director is liable under NRS 209.131 for day to day operations. He alleges that HDSP PREA Coordinator John Doe #5 and PREA compliance manager John Doe #6 should have been notified of Flores' sexual misconduct. He goes on to assert that Dzurenda, Williams, Blazono, and John Does #5 & #6 were aware that Plaintiff faced a risk, but disregarded that risk by failing to take reasonable measures to avoid the risk. No action was taken and Flores was allowed in Plaintiff's housing unit and was subsequently sexually assaulted. (ECF No. 26-1 at 8.)

Liberally construed, Plaintiff states a colorable Eighth Amendment failure to protect claim against Dzurenda, Williams, and Blazono, based on allegations they were notified of Flores' alleged initial sexual misconduct but took no steps to protect Plaintiff from the risk of harm that he alleges ultimately occurred when he was sexually assaulted by Flores again weeks later. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (prison officials have a duty to protect prisoners from being assaulted in prison, and violate the Eighth Amendment when the prisoner is exposed to a substantial risk of serious harm and the prison official knew of and disregarded that risk).

Plaintiff may proceed against Does 2, 5 and 6 when he learns their identity and within the parameters of any scheduling order deadlines to amend/add parties.

### 2. Count 2

Plaintiff re-alleges that on March 4, 2017, while serving breakfast, Flores stopped at Plaintiff's door to pass out trays. When the food flap was opened, Plaintiff approached the door to receive his tray and Flores placed the food on the food flap and reached in and grabbed Plaintiff's penis while moaning and saying, "damn."

At that time, Plaintiff requested to speak to correctional staff and was told the intercom was for emergency use only. Plaintiff asked again to speak with commanding staff once the next shift came, and was told someone would come, but no one did. He asserts: "This is retaliation through rape for repeating sexual misconduct." (ECF No. 26-1 at 9.)

As with the original complaint, Plaintiff states a colorable Eighth Amendment claim against Flores for the alleged sexual misconduct on March 4, 2017. *See Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012) (citations omitted) ("Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.").

Plaintiff does not state a retaliation claim against Flores. There are no allegations that Flores knew that Plaintiff had grieved the prior alleged sexual misconduct and then perpetrated the second alleged sexual misconduct act because of the filing of the grievances. Since Plaintiff has had two opportunities to state such a claim, the retaliation claim should be dismissed with prejudice.

### 3. Count 3

Plaintiff repeats the allegations about Flores watching Plaintiff in the restroom on April 20, 2017, while Plaintiff was naked from the waist down, and after 25 seconds said, "I like the way

you keep that ass." Plaintiff references Administrative Code 421 which prohibits voyeurism by NDOC staff. (ECF No. 26-1 at 10.)

An alleged violation of an administrative code or regulation does not necessarily give rise to a constitutional claim. The court interprets this as asserting a claim of violation of Plaintiff's right to privacy.

"[I]ncarcerated prisoners retain a limited right to bodily privacy." *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). "Shielding one's unclothed figure from the view of strangers … is impelled by elementary self-respect and personal dignity." *Id*. (citing *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985); *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) ("Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether.").

Given that Plaintiff alleges that Flores watched him unclothed from the waist down for 25 seconds before making an alleged inappropriate comment, the court finds Plaintiff states a colorable Fourth Amendment violation of privacy claim against Flores.

**4. Count 4**

Plaintiff alleges that on April 13, 2017, there was a leak of confidential information: the PREA report. He then asserts that prior to this leak of confidential information, he requested and received the full law of 42 U.S.C. §15601, et. seq. (PREA). He re-requested the law through multiple request forms and was told by the law library supervisor that 42 U.S.C. § 15601 does not exist. He submitted his request stating that it does exist on July 24, 2017. He was brought a law request form from John Doe #1 and was again told that the law did not exist. He asserts he was denied reasonable access to the courts as this delayed the filing of his 1983 complaint for 12 months. He also references that he was denied access to the courts in retaliation for filing

grievances, and makes reference to the Fourteenth Amendment's procedural and substantive due process provisions. (ECF No. 26-1 at 11.)

Plaintiff mentions the due process clause, but his claim is more appropriately analyzed under access to courts. Inmates do have a constitutional right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 828 (1977), *limited in part on other grounds in Lewis v. Casey,* 518 U.S. 343, 354 (1996). An inmate allegation a violation of their right of access to the courts must show "actual injury," a requirement that "derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey,* 518 U.S. 343, 349 (1996) (citations omitted). "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim." Id. at 348 (citation and internal quotations omitted).

Here, Plaintiff alleges that he was initially given 42 U.S.C. § 15601, but then was denied his request for the statute in subsequent requests with the reason that the authority does not exist. This is likely because effective September 1, 2017, PREA was transferred from 42 U.S.C. § 15601 to 34 U.S.C. § 30301. In any event, while Plaintiff asserts that this resulted in a delay in filing his complaint, he was able to successfully file the complaint. Therefore, he does not and cannot allege actual injury as a result of this alleged deprivation. As such, the access to courts claim in Count 4 should be dismissed with prejudice. (ECF No. 26-1 at 11.)

Plaintiff does not state a colorable retaliation claim as there is no allegation demonstrating a connection between any grievance and the denial of the request for the legal authority.

///

///

///

**5. Count 5**

Plaintiff alleges that on May 3, 2018, John Doe #2 delivered legal mail. On receipt, Plaintiff noticed the letter had been tampered with and was already open. He noticed the mail was sent from the Clerk of the District Court regarding case 3:18-cv-00190-MMD-WGC. Plaintiff alleges that this violates his constitutional rights. Under NDOC regulations, legal mail is only to be opened in the presence of the inmate. He asserts that he brought this to the attention of officials at ESP and they said that the mail had not been adequately secured by the sender. He references the right of access to the courts. Plaintiff also states that prior to this time, there was a confidential leak of information regarding this case, referencing retaliation. He also implicates the mail room sergeant in this claim. (ECF No. 26-1 at 12.)

While Plaintiff references access to courts, his claim actually sounds in the First Amendment and/or Fourteenth Amendment because it concerns allegations of improper handling of prison legal mail.

Prison officials do not have the right to read a confidential letter from an inmate to his lawyer. *Nordstrom v. Ryan*, 762 F.3d 903, 906. Prisoners do "have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected." *Mangiaracina v. Penzone,* 849 F.3d 1191 (9th Cir. 2017). The First Amendment also protects a prisoner's right to have legal mail opened in their presence with respect to civil cases. *Hayes v. Idaho Corr. Center,* 849 F.3d 1204 (9th Cir. 2017). Prisons do have the right to open and inspect, but not read, prison legal mail. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974).

There is no allegation here that John Doe #2 or the mail room sergeant read Plaintiff's legal mail-mail with counsel or his counsel's agent. Instead, Plaintiff asserts that a letter originating from this court appeared to have been opened before Plaintiff received it. Documents from the court, as

opposed to those from the inmate's lawyer, are not confidential. *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) ("Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail.").

Nor does Plaintiff state a colorable retaliation claim as there is no connection between any protected conduct and grievance writing.

Count 5 should be dismissed with prejudice.

**6. Count 6**

Plaintiff again alleges that there was a leak of confidential information—the PREA report—on April 13, 2017. He avers that shortly afterward, staff began to retaliate. Like Count 4, he claims that submitted a law request form to the law library and received the full text of 42 U.S.C. § 15601. Then, after the leak of confidential information, he was delayed legal work. He sent multiple legal request forms to be repeatedly told that 42 U.S.C. § 15601 does not exist. He resubmitted his request on September 12, 2017. John Doe #3 came to his housing unit to deliver the legal request and noticed that he only got the first page of 42 U.S.C. § 15601, when the statute is actually more than 25 pages front and back. He claims this subjected him to a denial of access to the courts. He also makes reference to retaliation for filing grievances. (ECF No. 26-1 at 13.)

Again, to state an access to courts claim, a plaintiff must demonstrate actual injury. Plaintiff does not assert any injury in connection with this claim. Moreover, in Count 4 he acknowledges he was ultimately successful in filing his civil rights action. Nor does this count contain any allegations that would support a retaliation claim. Therefore, Count 6 should be dismissed with prejudice.

///

### 7. Count 7

Plaintiff alleges that on August 1, 2017, Boonsarn knocked on Plaintiff's door to advise Plaintiff and his cellmate of incoming mail. Plaintiff received mail and noticed it was a return to sender legal marked envelope that had been opened outside his presence. The mail had been addressed to an attorney and had confidential legal mail written on the envelope. He seems to aver that this proceeded through mail room Sergeant Hunt. Plaintiff also alleges that prior to this there were multiple leaks of confidential information (the PREA report), and references retaliation for a grievance filed on staff, denial of access to the courts. (ECF No. 26-1 at 14.)

Preliminarily, Plaintiff does not state an access to courts or retaliation claim in Count 7. He does not include any allegations regarding how this denied him access to the courts or actual injury. Nor does he make any factual connection between the allegedly opened legal mail and the prior leak of confidential information or any prior grievance. Instead, this claim arises from the First Amendment.

As was stated above, the First Amendment protects a prisoner's right to have legal mail opened in their presence with respect to civil cases. *Hayes v. Idaho Corr. Center,* 849 F.3d 1204 (9th Cir. 2017). Liberally construing the allegations, Plaintiff should be able to proceed with his First Amendment legal mail claim against Correctional Officer Boonsarn and Sergeant Hunt in Count 7.

### 8. Count 8

Plaintiff references the alleged leak of confidential information on April 13, 2017. He asserts that John Doe #4 grievance coordinator neglected to properly perform his duties by advising Correctional Officer Peterson to handle the PREA report and this subjected Plaintiff to a substantial risk of serious harm. He avers that Peterson is unauthorized to handle the PREA report.

Plaintiff claims that he heard the contents of the PREA report prior to receiving it. (ECF No. 26-1 at 15.)

It appears Plaintiff is asserting that John Doe # 4 should not have allowed Peterson to handle the report, and ultimately Plaintiff heard the contents of the report before it was given to him. These allegations are insufficient to give rise to any constitutional claim for relief. Plaintiff seems to try to assert a failure to protect claim, but does not include any factual allegations that he was actually subject to an objective risk of harm; that these defendants knew of a risk of harm, or that they were responsible for the contents of the report being leaked. Therefore, Count 8 should be dismissed. It is not clear whether Plaintiff might state a claim based around these allegations; therefore, the dismissal should be without prejudice.

**9. Count 9**

Plaintiff alleges that the ESP mail room sergeant should be held liable for the theft of Plaintiff's legal mail for a period of sixth months where outgoing mail was not being received by his attorneys. Plaintiff again references the leak of confidential information and subsequent retaliation. (ECF No. 26-1 at 16.)

Liberally construing the allegations in Count 9, Plaintiff should be allowed to proceed with a First Amendment claim regarding the alleged theft of legal mail against ESP Mail Room Sergeant Hunt. Plaintiff includes no allegations to support a retaliation claim as he does not factually connect the alleged theft of legal mail to the leak of confidential information or any grievances.

**10. Count 10**

Plaintiff again alleges that all mail intercepted went through ESP's mail room and the sergeant is liable to the theft of legal mail for a six-month period when it was not received by his attorneys. (ECF No. 26-1 at 17.)

This claim is duplicative of Count 9 and should be dismissed.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** the motion to amend (ECF No. 26) and direct the Clerk to **FILE** the amended complaint (ECF No. 26-1) and:

(1) Allow Count 1 to **PROCEED** on an Eighth Amendment failure to protect claim against defendants Dzurenda, Williams, and Blazono, and against Does 2, 5 and 6 when Plaintiff identifies them and within the parameters of any scheduling order deadlines to amend/add parties;

(2) Allow Count 2 to **PROCEED** on an Eighth Amendment claim against Flores for alleged sexual misconduct on March 4, 2017, but **DISMISSING WITH PREJUDICE** the retaliation claim;

(3) Allow Count 3 to **PROCEED** on the Fourth Amendment invasion of privacy claim against Flores for the conduct alleged to have occurred on April 20, 2017;

(4) **DISMISS WITH PREJUDICE** Count 4;

(5) **DISMISS WITH PREJUDICE** Count 5;

(6) **DISMISS WITH PREJUDICE** Count 6;

(7) **DISMISS WITH PREJUDICE** the retaliation and access to courts claims in Count 7, but allow Plaintiff to **PROCEED** on the First Amendment legal mail claim against Correctional Officer Boonsarn and Sergeant Hunt in Count 7;

13

(8) **DISMISS WITHOUT PREJUDICE** the claims in Count 8 against John Doe #3 and Correctional Officer Peterson;

(9) Allow Count 9 to **PROCEED** with the First Amendment mail theft claim against ESP Mail Room Sergeant Hunt, but **DISMISS WITH PREJUDICE** the retaliation claim in Count 9; and

(10) **DISMISS** Count 10 as duplicative of Count 9.

To be clear, Plaintiff should only be allowed to proceed with his claims against Dzurenda, Williams, and Blazono, Flores, Boonsarn, Hunt, and Does 2, 5 and 6. The claim against John Doe #3 and Peterson in Count 8 should be dismissed without prejudice. All other claims and parties should be dismissed with prejudice.

If an order is entered adopting and accepting this Report and Recommendation, it should direct the Clerk to issue summonses for each of the defendants and send the same to the U.S. Marshal. The Clerk should also be directed to send sufficient copies of the complaint and the order to the U.S. Marshal for service on the defendants. The Clerk should also be directed to send to the plaintiff sufficient USM-285 forms. Plaintiff should be given 14 days to complete the USM-285 forms and return them to the U.S. Marshal for service, 400 S. Virginia Street, 2nd Floor, Reno, Nevada 89501. Plaintiff should be advised if he fails to follow the order, the defendants will be dismissed for failure to complete service under Federal Rule of Civil Procedure 4(m). Within 20 days of receiving from the U.S. Marshal a copy of the USM-285 form showing whether service has been accomplished, if any of the defendants were not served, and if Plaintiff wants service to be attempted again, he must file a motion with the court providing a more detailed name and/or address for service, or indicating that some other method of service should be attempted. Plaintiff should be reminded that service must be completed within 90 days of the date of the order. If

Plaintiff should require additional time to effectuate service, he must file a motion before the deadline that is supported by good cause.

Plaintiff should be reminded that once service is accomplished, Plaintiff must serve a copy of every pleading, motion or other document submitted for consideration of the court upon the defendants or, if an appearance has been entered by counsel, upon the attorney. Plaintiff must include with the original of each document filed with the court a certificate stating that a true and correct copy of the document was mailed to the defendant or counsel. The court may disregard any paper received which has not been filed with the Clerk, or that fails to include a certificate of service.

The Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 8, 2019.

_____
William G. Cobb
United States Magistrate Judge